AFRICAN METHODIST EPISCOPAL CHURCH OF BRIDGE-PORT ET AL. *v.* J. J. JENKINS ET AL.

BROWN, C. J., JENNINGS, INGLIS and O'SULLIVAN, Js.[1]

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued December 3, 1952—decided January 20, 1953

*Arthur Klein,* with whom was *Frederic M. Klein,* for the appellants (defendants).

*Huntley Stone,* for the appellees (plaintiffs).

O'Sullivan, J.  The African Methodist Episcopal Church of Bridgeport and its nine trustees brought this action against the Reverend J. J. Jenkins and the African Methodist Episcopal Church of the United States.  The plaintiffs sought a judgment declaring that the defendant church has no rights in the property of the plaintiff church and enjoining both defendants from interfering with its activities. In addition to their answer and special defense, the defendants filed a cross complaint requesting an injunction to restrain the plaintiffs not only from molesting the defendant Jenkins in exercising the functions of pastor of the plaintiff church but also from using the property as an independent church,

free from the control, supervision and jurisdiction of the defendant church. The court rendered judgment for the plaintiffs on the complaint and cross complaint, and from that judgment the defendants have appealed.

The defendant African Methodist Episcopal Church of the United States, hereinafter referred to as the General Church, was founded in 1816. Its history and organizational setup, as found by the trier, are described in a recent case. *Independent Methodist Episcopal Church* v. *Davis,* 137 Conn. 1, 4, 74 A.2d 203. They need not be here repeated at length. Suffice it to say that the polity of the church is not congregational but episcopal. "Its hierarchy is developed in pyramidal pattern from the General Conference at the apex down through the bishops and various conferences to the local churches at the base." Id., 12.

Other facts found are the following: On June 12, 1835, the land located at 393 Broad Street, Bridgeport, was conveyed to three individuals as trustees for a new society to be formed and known as the Colored Methodist Episcopal Ebenezer Church. The deed recited that the property was "to be used and occupied by said Society as a place whereon to erect a Church for Public Worship, and to be used and occupied for that purpose and no other forever." In 1843, the plaintiff church was incorporated under the name mentioned above. Shortly thereafter, the three trustees conveyed the property to the corporation. In 1850, the General Assembly changed the corporate name to the African Methodist Episcopal Church, of Bridgeport. 3 Spec. Laws 478. From here on, we shall call it the plaintiff.

Since 1870, the plaintiff has participated in the New England Annual Conference. One of these con-

ferences was held on the Broad Street premises in 1900. The plaintiff has accepted the appointment by the bishop of the presiding elder and has furnished him with reports about the affairs of the church.

The discipline of the General Conference prescribes a form of deed for use by local churches when ·acquiring property, by the terms of which the property is to be held in trust for the use of the General Church in accordance with the discipline of that church. In 1946, the plaintiff acquired a parcel of land for a parsonage. No attempt was made to have the deed follow the prescribed form. Furthermore, mortgages were placed on the church property in 1897, 1903 and 1946. These conveyances bear the signatures of individuals acting as the plaintiff's agents or trustees, and nothing in the instruments indicates that they were executed pursuant to authority or permission obtained from the General Church.

It is provided in the discipline that a local church attains the status of a "full-fledged member" of the General Church when the following requirements are fulfilled: (a) The persons organized as the local congregation express an intention and desire to become part of the General Church; (b) they then vote to submit the property and temporal affairs of their church organization to the control of the General Church, and this vote is reported by an authorized representative of the congregation to the annual conference, which thereafter takes action on the admission of the local church; (c) a ceremony of dedication is held at which the bishop or presiding elder is presented by the trustees with the keys of the church, as a token that it will forever after submit to the discipline, doctrine and government of the General Church and permit the ministers of that

church to preach in it. Some local churches, worshipping in the African Methodist Episcopal faith, have not made their property subject to the General Church and have only spiritual ties with it. These churches, however, are allowed to send representatives to the annual conference. They are not obliged to accept the pastors whom the bishop has appointed for them, although they usually do.

The plaintiff never became a member of the General Church; the requirements for such an affiliation were not met; and its property was not dedicated to the General Church. The plaintiff has accepted pastors appointed by the bishop, but only when they were satisfactory to its members. At least two such appointments have been rejected. All funds for the purchase of the originally acquired property and of the parcel bought in 1946 were contributed by the plaintiff's members and, except for the sum of $400 received as a loan from the General Church in 1941, all expenses for maintaining the property were paid by them.

On June 3, 1951, the bishop appointed the defendant, the Reverend J. J. Jenkins, to succeed the Reverend John G. Drake. The latter had served as pastor for approximately four years. All of the members of the plaintiff church wanted him to remain in that capacity. The former forcibly endeavored to enter upon the plaintiff's property contrary to the wishes of the congregation.

The court concluded that (1) the plaintiff has maintained its independent status from the time of its foundation, (2) the General Church has no rights in its property, and (3) the requested injunction should issue. Because of the view we take of these conclusions, it will be unnecessary to discuss others which the court reached.

The fundamental assertion of the defendants is that the plaintiff, by a claimed unconditional affiliation to the doctrines and tenets of the African Methodist Episcopal faith and by a claimed acceptance of the provisions of the discipline, has submitted its property to the control of the General Church. The defendants are met, at the outset, by a finding which, if remaining uncorrected, makes their position untenable. A careful study of the assignments of error addressed to the finding shows them to be without merit. The finding is not subject to correction. In view of this, we limit ourselves to the observation that the three conclusions to which we have just referred and which the defendants attack are amply supported by the subordinate facts. *Independent Methodist Episcopal Church* v. *Davis*, 137 Conn. 1, 15, 74 A.2d 203. The appeal amounts to little more than a request that we retry the case. This we cannot do. *Belledeau* v. *Connecticut Co.*, 110 Conn. 625, 633, 149 A. 127; Maltbie, Conn. App. Proc. §§ 4, 92.

The defendants complain of two rulings on evidence. Even if we assume that both rulings were erroneous, they were not harmful. The case was tried to the court, not to the jury. Only fundamental and material errors which may work an injustice ought to disturb a judgment rendered in substantial accord with principles of law. *Turgeon* v. *Woodward*, 83 Conn. 537, 547, 78 A. 577; see *State* v. *Kurz*, 131 Conn. 54, 65, 37 A.2d 808; 1 Wigmore, Evidence (3d Ed.) § 21.

There is no error.

In this opinion the other judges concurred.