THE ARVEE CONSTRUCTION COMPANY *v.* MARY
ARDOLINO, EXECUTRIX (ESTATE OF
ANTONIO ARDOLINO)

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 2—decided October 30, 1956

*Charles M. Lyman,* for the appellant (plaintiff).

*Charles G. Albom,* with whom, on the brief, was

*Edward L. Reynolds, Jr.,* for the appellee (defendant).

DALY, J. The plaintiff brought this action against Antonio Ardolino, now deceased. The plaintiff's purpose was to establish the existence of an equitable mortgage, based on an agreement with the decedent. It asked for a decree of specific performance of the agreement, an accounting and damages. The court rendered judgment for the defendant, and the plaintiff has appealed.

Although each party seeks corrections, the finding as made must stand. The material facts found by the trial court are as follows: The plaintiff, on April 18, 1949, was a corporation operated by Raymond Vece, its president. It owned real property on Main Street in East Haven. Vece, a general contractor, used the plaintiff corporation in conducting many of his own business activities and managed the corporation virtually by himself. About 1927, he became acquainted with Ardolino, an insurance broker, and had, until the bringing of this action, many business dealings with him concerning the financing of real estate. On April 18, 1949, the plaintiff's Main Street property was subject to a first mortgage, held by the Branford Federal Savings and Loan Association, on which was due $8168; a second mortgage on which was due $2108; a third mortgage on which was due $3031; a fourth mortgage, held by Ardolino, on which was due $1040; and taxes to the town of East Haven totaling $889.13. There were three attachment liens on the property amounting to $5040. The arrearage in the monthly payments on the mortgage held by the Branford Federal Savings and Loan Association amounted to approximately $1700, and the mortgagee had turned the matter over to its

attorney to bring a foreclosure action. Early in 1949, Vece, acting through an agent, endeavored to refinance the first, second and third mortgages on the property. A letter of commitment for a first mortgage of $12,000 had been received from the trustees of the estate of Constand A. Moeller, provided a right of way over adjoining property could be obtained. Unsuccessful efforts to sell the property had been made for a year and a half. Vece owed Ardolino a substantial sum for insurance premiums. In addition, he owed large sums to others and was in serious financial difficulty. He applied for help to Ardolino, who agreed to assist him.

Vece and Ardolino went to the Branford Federal Savings and Loan Association for the purpose of clearing up the mortgage and tax arrearages, and Ardolino told its executive officer that he was going to collect the rents and look after the payments on the mortgage. Vece preferred to have the title conveyed to Ardolino in satisfaction of the fourth mortgage debt rather than have one of the other incumbrancers take over the property, and he agreed with Ardolino to quitclaim the property to him in satisfaction of the indebtedness owing to him on his mortgage. On April 18, 1949, the plaintiff conveyed title to the property by quitclaim deed to Ardolino. The deed recited that the consideration was less than $100. No revenue stamps were attached. Ardolino believed that the recital of consideration was stated as it was because no money passed at the time. The wording of the recitals was left to the lawyer who prepared the deed. Ardolino paid no cash for the deed. He gave neither a release of mortgage nor a receipt. He did not believe that a release of mortgage was necessary. He did, however, deliver to Vece his mortgage deed and note. On April 18, 1949,

the buildings on the premises were not completed and the property, then rented in part, had a value of at least $15,000. Subsequent to the conveyance to him, Ardolino paid to the holder of the first mortgage $1682.74 on the mortgage indebtedness and expended more than $1300 in payment of back taxes. He paid utility bills and insurance premiums and made repairs on the property. No payments by Vece after April 18, 1949, relating to the premises ever came to the knowledge of Ardolino. No claim that repairs had been made to the property by Vece came to the attention of Ardolino until the action was brought.

Shortly after the property was conveyed to Ardolino, Vece asked Ardolino for permission to occupy a vacant shed in the rear of the premises for storage of his plumbing supplies. Ardolino gave the requested permission, believing that this portion of the premises had been condemned for ordinary rental purposes. Vece paid no rent to Ardolino. Vece rented portions of this rear part of the property to third persons. Ardolino's visits to the premises were infrequent. He did not know that Vece had been collecting rent from anyone until about the time suit was commenced. At a time after April 18, 1949, Ardolino told one of the tenants that he was collecting the rent under an assignment starting November 1, 1949. He did not tell the tenant that he owned the building until four or five months before his death in 1954. He did tell the tenant that he wanted to sell the property.

On February 2, 1950, a grant of a right of way over adjoining property owned by Felicia Vitale, Vece's sister, had been obtained by Vece without any payment. Ardolino then executed a first mortgage to the trustees of the Moeller estate for $12,000 and a second mortgage to another party for $3000.

Payments totaling $13,776.17 were made to the holders of the three mortgages then released, to attaching creditors, to an agent who had procured the new first mortgage, to the town collector of taxes for the balance of taxes owing on the adjoining premises of Felicia Vitale on the lists of 1946, 1947 and 1948, to the trustees of the Moeller estate for interest in advance, and to attorneys for services and recording fees. Ardolino paid $1776.17 into the fund from which these payments were made, and $12,000 came from the payment made by the holders of the new first mortgage.

The trial court found that, after April 18, 1949, and until his death, Ardolino did everything consistent with ownership of the fee, that his actions refute the plaintiff's claim that he conducted himself as one who was expected to turn back the property, that no agreement was ever made between the plaintiff and Ardolino that Ardolino would take only the legal fee to the property and the plaintiff would retain an equitable interest, and that the transaction was, as the defendant contends, a conveyance in satisfaction and extinguishment of the fourth mortgage and the debt secured thereby, with no agreed reservation of equitable title in the grantor.

The plaintiff contends that the trial court could not reasonably conclude from the subordinate facts that the plaintiff and Ardolino intended that by the execution of the quitclaim deed absolute title was to be conveyed to Ardolino and that it erred in not concluding that they intended that the deed was to be an equitable mortgage. In ascertaining whether the deed was intended to be what its provisions purported or, instead, in effect a mortgage, the situation and course of conduct of the parties and all the surrounding circumstances are to be considered. *Scala-*

*brin* v. *Harrison,* 111 Conn. 266, 267, 149 A. 687. The appeal amounts to little more than a request that we retry the case. This we cannot do. *Broderick* v. *Shea,* 143 Conn. 590, 592, 124 A.2d 229; *Saunders* v. *Saunders,* 140 Conn. 140, 143, 98 A.2d 815; *African Methodist Episcopal Church* v. *Jenkins,* 139 Conn. 418, 423, 94 A.2d 618. The court's conclusions are to be tested by the finding and not by the evidence. No conclusion of the trial court can be disturbed by this court unless it appears that it either involves the application of some erroneous rule of law material to the case or was unreasonably drawn from the facts found. *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* 142 Conn. 349, 358, 114 A.2d 216. The trial court's conclusions are not unreasonable or illogical or contrary to or inconsistent with the relevant facts found. Consequently, this court may not intervene. *Buckley* v. *Webb,* 143 Conn. 309, 315, 122 A.2d 220; *Jack Torosian, Inc.* v. *Guastamachio,* 139 Conn. 754, 757, 97 A.2d 116.

The plaintiff's assignment of error in a ruling upon evidence requires no consideration because of its failure to comply with § 405 of the Practice Book. *Krasnow* v. *Krasnow,* 140 Conn. 254, 260, 99 A.2d 104; *Attruia* v. *Attruia,* 140 Conn. 73, 79, 98 A.2d 532; *Nickerson* v. *Griffing,* 139 Conn. 720, 727, 97 A.2d 559.

There is no error.

In this opinion the other judges concurred.