NORTHEASTERN GAS TRANSMISSION COMPANY ET AL. *v.* FRANCES H. WARREN ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued December 4, 1956—decided January 17, 1957

*Warren W. Eginton,* with whom, on the brief, was *George F. Lowman,* for the appellants (defendants).

*Arthur C. Williams,* with whom, on the brief, was *Daniel F. Wheeler,* for the appellees (plaintiffs).

O'SULLIVAN, J. Northeastern Gas Transmission Company presented this application to the Superior Court in conformity with the provisions of what is now § 2620d of the 1955 Cumulative Supplement to the General Statutes. The applicant sought an order appointing a committee to assess damages for the taking of a right of way for a high-pressure natural gas transmission line across property owned by Otey Y. Warren, Frances H. Warren and Elinor F. Warren, who were made defendants. The Norwalk Savings Society, holding a mortgage upon the property, was also cited in as a defendant but was subsequently dropped. When Otey Y. Warren died during the pendency of the application, his executrices were substituted as defendants and appeared in his stead. To complete the history of the change of parties, Tennessee Gas Transmission Company, at its own request, was added as a plaintiff upon a showing that it had acquired from its wholly owned subsidiary, the named plaintiff, all of the latter's pipe lines and appurtenant facilities located in

Connecticut and had assumed all of the liabilities of the subsidiary. We shall herein refer to both plaintiffs as though they had operated jointly in the activities giving rise to this litigation.

As requested in the application, the court appointed a committee of three disinterested persons to assess just damages for the taking of the easement. Upon being sworn, they viewed the locus and held hearings at which the parties submitted evidence bearing on the extent of the damages. Thereafter, the committee filed with the court their report, concluding with the statement that the damages suffered by the defendants were assessed at $4020. Pursuant to § 171 of the Practice Book, the defendants filed a motion to correct the report. The committee, to whom the motion was sent, granted it in part and denied it in part, and so reported to the court. At this point, the defendants, acting under § 173 of the Practice Book, filed three exceptions to the report as amended. The exceptions were overruled, the report was accepted, and, from the judgment rendered, the defendants have appealed to this court.

The facts found by the committee need not be stated in the detailed manner in which they appear in the report as amended. For the purposes of this appeal, the following summary will suffice: The defendants own almost ten acres of land lying in the town of Norwalk. The plaintiffs, in order to continue with the laying of their gas transmission line across the state, and acting under the authority set forth in Public Act No. 3 of the March, 1950, special session of the General Assembly (as amended, Cum. Sup. 1955, c. 264a), took, in 1951, a permanent easement in seventy hundredths of an acre of the defendants' property and a temporary easement, to expire

at the latest two years after the taking, in thirty-seven hundredths of an acre. The installation of the pipe line in the defendants' property was completed by July, 1952, and within several months the line was actually put into operation.

It was the contention of the defendants to the committee that compensation for the taking should, as they expressed themselves, "include an amount representative of the depreciated market value found to be caused by a not entirely unfounded public fear of danger" from the pipe line. To support the factual part of that proposition, the defendants submitted evidence to establish the existence of a public fear of danger arising from the maintenance of the plaintiffs' transmission lines. For example, they offered evidence of three leaks on feeder lines, one having occurred at Torrington on October 15, 1952, one at Norwalk on November 14, 1952, and one at Winsted on December 11, 1952. The evidence of the plaintiffs on this phase of the matter was designed to dispute the existence of any such fear. Thus, they offered evidence that in the immediate neighborhood of the defendants' property many one-family houses, a gasoline service station, a nursery school and an electric power station had been built since the taking and, furthermore, that on other nearby properties through which the plaintiffs' pipe line had been laid the land within the right of way itself was being used for such purposes as children's play yards, lawns, driveways, gardens and a practice tee on a golf course. On the basis of this contradictory material, the committee incorporated in their report the conclusion that "[t]he extent and type of real estate activity upon and adjacent to properties subject to the plaintiffs' easement do not indicate a general apprehension on the part of the buying public."

Then follows this significant statement: "There was no evidence offered that a sale of a portion of the [defendants'] property which took place subsequent to the installation of plaintiffs' pipe line was unfavorably affected by that factor."

In spite of the committee's conclusion that there was no public fear at all from the transmission line, they added in the report the further statement that "[i]n the light of the extent of the plaintiffs' main and feeder pipe lines throughout the State of Connecticut the leaks referred to, taken with other evidence offered by the defendants, do not warrant a finding that there is *a well-founded public belief* that said pipe line is dangerous." We have italicized the phrase "well-founded public belief" because it is obvious that the committee had in mind the rule of law stated in *Meriden* v. *Zwalniski*, 88 Conn. 427, 91 A. 439. In that case, the city of Meriden, acting under its charter, condemned for use as a reservoir parts of two farms owned by the defendants. The committee appointed to determine proper compensation for the taking assessed damages because the salability of the part of each farm not taken by the city was injuriously affected by the public belief, whether well founded or not, that the construction and maintenance of the reservoir would impose annoying restrictions and unhealthful conditions. Holding that the committee acted illegally in making the assessment, we said (p. 433): "If the belief was not well founded, then the taking and use for reservoir purposes of the other lands will not in fact injure that which remains. What causes the damage to the latter is not the taking and use of the other lands, but the ignorance, prejudice, or folly of those who wrongly conceive and believe that it will cause them damage."

The defendants have urged us to overrule the *Zwalniski* case, supra, or, at least, to regard it as authority for the proposition that a committee appointed to assess damages for the taking of land by condemnation proceedings may consider and accept the opinion of a witness as to market value, where that opinion relies in part upon a "not entirely unfounded," as distinguished from a "well-founded," public belief of danger arising from the use to be made of the taken land. It is not necessary that we take either step as to the *Zwalniski* case. The report of the committee spares us that duty.

Any addition to the facts found by the committee is now impossible because there is no appendix, incorporating a narrative of evidence, accompanying the defendants' brief. See Practice Book §§ 173, 415, 447, 448, two of which we quote in part in the footnote.[1] Since the facts must remain, then, as they appear in the report, we again note the absence therein of any finding that there was any public fear at all. The finding that there was not a well-founded public fear is not the equivalent of a finding of the existence of a fear "not entirely unfounded." The result is that we are confronted by a set of facts which would reduce to dictum any discussion of the law as it deals with situations where a belief of danger lies in the public mind. On the record we can

---

[1] "Sec. 415. EVIDENCE NOT TO BE PRINTED IN RECORD; EXCEPTIONS. . . . [E]vidence taken before a committee . . . and filed in court in connection with exceptions to a report . . . shall not be printed in the record except as it is made a part of a pleading, or of a finding or report in explanation of a ruling made in the course of the hearing, but it may be presented in an appendix to a brief as hereinafter provided. . . ."

"Sec. 447. EVIDENCE TO BE PRINTED IN APPENDICES. . . . [A]ny portion of a transcript of evidence on file which a party desires to present to the court shall be printed, and only printed, in an appendix to the brief. . . ."

find nothing erroneous in the action of the court in overruling the exceptions to the report.

There is no error.

In this opinion the other judges concurred.