JAMES T. CORRIVEAU ET AL. *v.* JENKINS BROTHERS

BALDWIN, O'SULLIVAN, WYNNE, DALY and KING, Js.

Argued April 2—decided May 22, 1957

*Samuel Gruber* and *Robert B. Seidman,* for the appellants (plaintiffs).

*Morgan P. Ames,* with whom was *Edward R. McPherson, Jr.,* for the appellee (defendant).

WYNNE, J. In this action the plaintiffs are seeking to recover wages they claim are due as part of the compensation for their employment during the year 1947. It is a class action on behalf of a large number of the employees of the defendant. The defendant is a manufacturer in Bridgeport. In its answer it denied the claim made by the plaintiffs. The pleadings having been closed, the matter was referred to a state referee to hear and report to the court the facts in the case.

Following is a summary of the facts found by the referee which are not challenged: The named plaintiffs are James T. Corriveau, John Lankton and Luther Titus. They are suing in behalf of themselves individually and for the benefit of all others similarly situated, being about one thousand in number, to recover upon the basis that each of the plaintiffs was entitled to receive at the end of the

year 1947 payment of a sum equal to 10 per cent of his total earnings during that year. In accordance with the agreement of the parties, the hearing was confined to the question of the company's liability without regard to the amount which any particular plaintiff would be entitled to recover should the defendant be held to be liable. The defendant is a New Jersey corporation. The plaintiff Corriveau is an employee in the maintenance department and has been employed by the defendant since 1940. He became, in 1946, president of the union which was the accredited bargaining representative for the company employees and continued in that position through 1947. The plaintiff Lankton was in 1947 an employee of the company and a member of the union. The plaintiff Titus was an employee throughout the year 1947 and was a member of the union and had been chief steward. After the company failed to make a year-end payment to its employees at the end of 1947, and after the union failed to obtain such a payment, the three named plaintiffs were appointed a committee to take such action as counsel might advise. The present action ensued. Between January 5 and February 6, 1950, papers were circulated among the employees of the company authorizing the named plaintiffs to represent any employee signing the papers. A few less than 500 employees became signatories. Previously, year-end payments had been made to serve as an incentive to employees. The 1946 wage agreement between the company and the union made no reference to any year-end payment.

Upon the basis of voluminous findings, of which the above is a summary, the referee found that the company had not agreed to make a year-end payment in 1947 and had not intended that the practice

which had grown up should give rise to any future obligation. There were motions both by the plaintiffs and the defendant to correct the referee's report. While some corrections were made, the findings that remain are in all respects as set forth above. The final and definitive report was accepted by the court and judgment was rendered thereon. This appeal by the plaintiffs is from that judgment.

The assignments of error are in two categories. The first concerns the rulings on the defendant's motion for more specific statement and the plaintiffs' motion for disclosure. No point is made in the plaintiffs' brief regarding these rulings and they are treated as abandoned. *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn. 388, 390, 94 A.2d 1; Maltbie, Conn. App. Proc. (2d Ed.) pp. 208, 415. There are ten paragraphs in the second category. The sole issue comprehended in nine of them is succinctly stated by the plaintiffs as follows: Did the court err in accepting the referee's report that the plaintiffs under their contract of hire were not entitled to a year-end payment such as had customarily been made by vote of the directors? Clearly, the answer to the question raised is concerned solely with whether the company had established a custom which became part of the fabric of employment. In other words, did the practice of the company over the years give rise to an implied contract to pay additional compensation at the end of each year?

Six paragraphs of the plaintiffs' motion to correct the referee's report amount to requests to make findings that no evidence was presented on various aspects of the long and heated dispute. None of these requests fall within the rule of *Tiernan* v. *Savin Rock Realty Co.,* 115 Conn. 473, 475, 162 A. 11. One paragraph seeks to convert sketchy statements of

two witnesses into a finding of a generally announced and binding company policy. The referee failed to make the finding requested. The matter was one within the province of the referee to determine, and the court cannot interfere by treating that testimony as having established the fact claimed. Practice Book § 173. The appendix filed by the plaintiffs amounts to little, if anything, when read in the light of the referee's detailed findings. It consists of three pages and a half. There is nothing whatever in it to suggest any infirmity in what the referee found. The plaintiffs seek to have us order extensive corrections in the referee's findings. The findings as corrected by him are supported by the evidence and must stand. It is not the function of the referee, in passing on motions to correct, merely to find some evidence to sustain his findings but rather to review all of the evidence to determine whether, on the basis of the weight of it, any correction is necessary. *Hopewell Baptist Church* v. *Craig,* 143 Conn. 593, 598, 124 A.2d 220. It appears from the record that this was done. The appeal amounts to a request that we retry the case, which we cannot do. *African Methodist Episcopal Church* v. *Jenkins,* 139 Conn. 418, 423, 94 A.2d 618.

As has already been pointed out, the plaintiffs place their reliance on the principles of implied contracts. A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. *Collins* v. *Lewis,* 111 Conn. 299, 304, 149 A. 668; *Skelly* v. *Bristol Savings Bank,* 63 Conn. 83, 87, 26 A. 474; 3 Corbin, Contracts, p. 169; 12 Am. Jur. 499. Here, the referee concluded from subordinate facts properly found that there was no implied contract to pay extra compensation. Since this conclu-

sion was legally drawn, there can be no recovery. The plaintiffs lay great stress on *Tilbert* v. *Eagle Lock Co.,* 116 Conn. 357, 165 A. 205. That case dealt with an express contract to pay extra compensation subject to a right of revocation at the will of the employer. An attempt to exercise the right of revocation after the employee's death was held to be ineffective. Here, we are dealing with the claim that an implied contract existed, but the referee found that there was no basis for such a claim. In *George A. Fuller Co.* v. *Brown,* 15 F.2d 672, 675, it was held that there was a definite promise to pay an additional bonus. Such an element is lacking in the case at bar.

The plaintiffs also complain of two rulings on evidence. It appears that in each instance the referee's ruling was based on the conclusion that it had not been shown that the persons with whom the witness claimed to have had conversations had any authority to speak for the defendant. We have no way of knowing that the referee would have been influenced in his conclusions if he had listened to the testimony sought. See *Hlavati* v. *Board of Adjustment,* 142 Conn. 659, 668, 116 A.2d 504.

We find nothing erroneous in the action of the court in overruling the exceptions to the referee's report. *Northeastern Gas Transmission Co.* v. *Warren,* 144 Conn. 217, 222, 128 A.2d 783.

There is no error.

In this opinion DALY and KING, Js., concurred; O'SULLIVAN, C. J., and BALDWIN, J., concurred in the result.