NORTHEASTERN GAS TRANSMISSION COMPANY *v.* TERSANA ACRES, INC.

O'SULLIVAN, C. J., BALDWIN, WYNNE, DALY and KING, Js.

Argued June 6—decided July 26, 1957

*Joseph M. Brandon,* with whom, on the brief, were *David E. FitzGerald, Jr., Charles Stroh, Charles J. Wood, Jr.,* and *Jeremiah A. Cronin,* for the appellant (plaintiff).

*Daniel E. Brennan, Jr.,* with whom were *James J. A. Daly* and, on the brief, *Thomas F. Seymour,* for the appellee (defendant).

WYNNE, J. This is an appeal by the plaintiff from a judgment rendered upon the report of a committee appointed in condemnation proceedings to obtain an easement for a gas transmission line under

§ 2620d of the 1955 Cumulative Supplement to the General Statutes.

A brief summary of facts follows: On April 7, 1952, the defendant was the owner of a tract of land consisting of 166 acres situated in the town of Easton. The terrain is generally sloping, rolling, undulatory and heavily wooded. The tract is in a residential zone where building lots are required to contain at least 40,000 square feet, a frontage of at least 200 feet on any abutting street, and a minimum setback for any building of 50 feet from any street and 40 feet from all other boundaries. The plaintiff acquired a permanent easement for the construction and maintenance of a natural gas pipe line. The easement is 30 feet wide and 1339 feet long and runs in a generally westerly direction across the southeastern portion of the defendant's property. Also included was a temporary easement ten feet wide on each side of the permanent easement. The highest and best use of the defendant's property is as a residential development for expensive homes. As early as 1940 the defendant's predecessor in title planned the subdivision of the entire tract, and after the organization of the defendant in 1948 it planned the development of the entire tract as an integral unit with connecting and continuous roads throughout. Prior to April 7, 1952, a subdivision plan of the northwesterly portion was filed and was approved by the town of Easton. While roads have not been constructed in the southerly and easterly portions of the tract, preliminary clearing, including the felling of large trees, has been done in those sections for the extension of a road already established.

The plaintiff filed a motion to correct the report of the committee and asked for extensive changes.

Some were granted by the committee. The court overruled the exceptions taken upon the refusal of the committee to grant others. It is the function of a committee to weigh the testimony and determine the facts. In so doing, it may accept part of the testimony of an expert and reject other parts. The committee is not bound by the opinion of experts. *Clark* v. *Haggard,* 141 Conn. 668, 674, 109 A.2d 358; *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641. There is no merit in the assignments of error addressed to the action of the trial court upon the exceptions taken by the plaintiff to the committee's report.

The two other main issues are whether the court erred in upholding the action of the committee in assessing the damages upon the consideration of the land as an integral unit and whether it erred in sustaining the committee in its decision to include as an element of the damages the public belief in the danger inherent in the presence of a gas pipe line. The committee made its award in the alternative, finding that the loss in fair market value if the land was considered as a real estate development subdivided with streets and building lots was $27,279, and the loss if the land was considered on an acreage basis as an integral unit was $26,560. An award in the alternative is proper procedure. Practice Book § 169.

The committee found upon competent testimony that the highest and best use of the defendant's property was for residential purposes and determined its value for these purposes. The court properly accepted this finding. *Campbell* v. *New Haven,* 101 Conn. 173, 181, 125 A. 650; *Housing Authority* v. *Lustig,* 139 Conn. 73, 76, 90 A.2d 169. The court found, contrary to the defendant's con-

tention, that the market value of the land should be determined on an acreage basis and thus accepted the second alternative as to value found by the committee. But it determined, contrary to the plaintiff's contention, that if the acreage basis was used, the property should be considered as an integral unit. Under the circumstances this was proper. Where part of a parcel of land or an easement in it is taken by eminent domain, the general rule is that the damages are the difference between the market value of the whole tract as it was before the taking and its market value after the taking. *Andrews* v. *Cox,* 127 Conn. 455, 457, 17 A.2d 507; *New York, N.H. & H.R. Co.* v. *New Haven,* 81 Conn. 581, 583, 71 A. 780.

"[I]n determining market values in awarding damages for land taken, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land." *Andrews* v. *Cox,* supra, 458. The plaintiff complains because the committee found, and the court, in accepting its report ruled, in effect, that there was a well-founded public belief in danger from the operation of the plaintiff's pipe line which affected the market value of the land now subject to the easement and that the damages should include this element. In *Meriden* v. *Zwalniski,* 88 Conn. 427, 433, 91 A. 439, we held that an unfounded public belief that the taking of a part of a farm for reservoir purposes would lead to annoying official supervision and restrictions in the use of the land remaining after the taking was not a damage resulting from the condemnation for which there could be recovery. We then pointed out that there was evidence that the proximity of the reservoir to the land remaining would result in unhealthy

conditions. As to this, we stated that if the committee had found that such conditions would, in effect, result, that finding would show a well-founded belief on the part of the witnesses and, if the belief was general in the public mind, a well-founded public belief. "But," we said, "it would be the fact that the reservoir really created the condition, and not the private or public belief that it did, which would entitle the [owners] to damages." A well-founded public belief in danger from the proximity of a gas transmission line is a proper element of damages. *Northeastern Gas Transmission Co.* v. *Lapham,* 19 Conn. Sup. 468, 473, 117 A.2d 441, and cases cited; 1 Orgel, Valuation under Eminent Domain (2d Ed.) p. 279; 5 Nichols, Eminent Domain (3d Ed.) p. 41; note, 38 A.L.R.2d 788, 801.

The claim was made in *Northeastern Gas Transmission Co.* v. *Warren,* 144 Conn. 217, 128 A.2d 783, that damages from the taking of an easement for the location of a gas transmission line should include compensation for any depreciation in value caused by public fear of danger, whether the fear was well founded or not, so long as it was not entirely unfounded. We declined to consider this claim because the committee's finding that there was not a well-founded public fear was not the equivalent of a finding of the existence of a fear "not entirely unfounded." In short, in that case the matter was disposed of upon the finding of the committee. In the case at bar the committee did find that there was a general public belief in danger from the operation of the plaintiff's pipe line and that this belief was well founded in fact. Under these circumstances, the court properly ruled that this element of damages was to be taken into consideration in fixing the market value of the de-

fendant's land after the taking. This element of damages would include the so-called consequential damages resulting from the proximity of the pipe line after it leaves the defendant's land and extends through lands of others adjacent to the southerly boundary of the defendant's land. *Andrews* v. *Cox,* 129 Conn. 475, 481, 29 A.2d 587.

The committee found that the plaintiff left on the land, within the confines of the easement and adjoining it, large boulders unearthed by the construction work and unsightly piles of cut trees, rock and brush. The committee also found that the cost of cleaning up and restoring the property to a condition as close to its original condition as was reasonably possible under the circumstances would be $4500. This sum was allowed as part of the total damages for depreciation. It represented the depreciation in value due to the condition in which the plaintiff left the premises. Sections 2621d and 2622d of the 1955 Cumulative Supplement impose the duty on the pipe-line corporation of leaving in as good a condition as they were in prior to the construction both the property occupied temporarily and the property occupied permanently. No authorities are required to support the proposition that a failure to perform this statutory duty is a proper element of damages. The committee found, and the court rightly concluded, that the sum of $4500 should be added to the $26,560, making a total of $31,060 as the damages for the taking of the defendant's land. *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 690, 67 A.2d 851; *Stamford* v. *Vuono,* 108 Conn. 359, 370, 143 A. 245.

There is no error.

In this opinion the other judges concurred.