## Terry L. Christensen *v.* Bic Corporation
## (6642)

Spallone, Stoughton and Norcott, Js.

Argued March 10—decision released May 23, 1989

*George P. Birnbaum,* for the appellant-appellee (defendant).

*Joseph D. Garrison* and *JoNel Newman,* for the appellee-appellant (plaintiff).

Stoughton, J. This is an appeal by the defendant after a jury verdict in favor of the plaintiff. The plaintiff filed a cross appeal asserting error in the trial court's refusing to permit the jury to find that a bonus constituted a wage within the meaning of General Statutes § 31-71a. We find error on the appeal.

In an amended complaint, the plaintiff raised the following allegations: he received a bonus for each year of his employment except 1983; it was the custom and practice of the defendant to pay a bonus based on performance of the company and of the individual; the bonus constituted wages within the meaning of General Statutes § 31-71a; he was entitled to a bonus for 1983; and he was owed wages in the amount of the unpaid bonus. In a second count, the plaintiff alleged that the defendant was unjustly enriched in the amount of the unpaid bonus. At the conclusion of the plaintiff's case, the defendant moved for a dismissal or, in the alternative, for a directed verdict. There was a lengthy colloquy between the court and counsel during which the court suggested that, unless there were something produced in addition to what it had heard, the count alleging unjust enrichment would not be considered, and that it did not consider that the plaintiff's claim was one for wages. The following day, before any evidence was introduced, there was further colloquy. The defendant argued that the complaint alleged a claim for wages, that the second count alleged unjust enrichment, and that there was no count alleging a breach of contract. The plaintiff offered to amend by adding a third count to conform to the proof if the complaint did not allege implied contract sufficiently. The court then said that it had decided that the second count which alleged unjust enrichment, would not go to the jury and that a bonus is not a wage, and that the jury would consider whether to allow a bonus.

The motion for dismissal was improperly made under the circumstances. See Practice Book § 302. The court did not rule specifically on the motion for directed verdict, but the clear implication was that the court would not direct a verdict because it stated that the jury would consider whether to allow a bonus.

The court had suggested during the examination of the first witness that counsel refrain from taking exception each time one of them disagreed with one of his rulings. In reliance upon this suggestion, the plaintiff did not except to the ruling of the court, to the extent that there was one, on his complaint. He subsequently filed a second amended complaint alleging that it was the custom, practice and policy of the defendant to pay a bonus based upon performance of the company and the individual during the preceding year, that, by promulgating the custom, practice and policy of paying an annual bonus in exchange for enhanced performance, the defendant had created a legitimate expectation on the part of the plaintiff that he would be paid a bonus for 1983, that the plaintiff had relied upon this expectation, that the defendant knew or should have known that the plaintiff would rely upon its custom, practice and policy, and that the defendant had breached its implied contract with the plaintiff by failing to pay his bonus for 1983. The jury returned a verdict for the plaintiff, and the defendant moved to set it aside. The motion was denied and the defendant appeals.

The defendant claims that the trial court erred in refusing to set aside the verdict, in excluding certain evidence, and in refusing to charge in accordance with its requests to charge.

The jury could reasonably have found the following facts. The plaintiff began working for the defendant, the Bic Corporation, in 1975, and his employment was terminated in December, 1983. During his employment by Bic, the plaintiff received periodic promotions and, starting in 1976, he received a bonus every year except 1983. The plaintiff did not become aware that Bic paid bonuses to its employees until after he had started working there. The plaintiff advanced to become one of the top twenty employees at Bic. Starting in 1979,

he was responsible for hiring, firing, supervising and recommending bonuses for several other employees. The plaintiff made his recommendations for bonuses on a list of employees working under him. That list was furnished by his supervisor. At the time of his discharge, the plaintiff was earning a yearly salary of $66,100. In late February or early March of each year, the plaintiff received a bonus that was based on corporate and individual performance during the preceding year. After his discharge, the plaintiff received almost $36,000 in severance pay. In October, 1984, the plaintiff's lawyer wrote a letter to Bic claiming that the plaintiff was entitled to receive a bonus paid in March, 1984.

The defendant contends that at trial the plaintiff failed to produce any evidence that it had entered into an implied contract by which it would pay the plaintiff a bonus even if he was discharged before the bonuses were authorized.

An implied contract depends upon the existence of an actual agreement between the parties. *Coelho* v. *Posi-Seal International, Inc.,* 208 Conn. 106, 111, 544 A.2d 170 (1988). Whether the parties have entered into such an agreement is a question of fact. *Corriveau* v. *Jenkins Bros.,* 144 Conn. 383, 387, 132 A.2d 67 (1957). It is the plaintiff's burden to prove, by a preponderance of the evidence, that the defendants had agreed by either words or deeds to recognize and undertake a contractual commitment to pay a bonus for the preceding year even though the plaintiff was no longer an employee. See *Coelho* v. *Posi-Seal International, Inc.,* supra; *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 212 n.2, 520 A.2d 217 (1987); *Rahmati* v. *Mehri,* 188 Conn. 583, 587, 452 A.2d 638 (1982). Absent specific contract language, whether there was a contract, and the terms of that contract, are questions of fact. *Bolmer* v. *Kocet,* 6 Conn.

App. 595, 608, 507 A.2d 129 (1986); *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 404, 499 A.2d 64 (1985), rev'd on other grounds, 202 Conn. 190, 520 A.2d 208 (1987); see also *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981).

We agree with the defendant that the plaintiff's evidence does not show that Bic, either by its words or by its conduct, entered into an implied contract with the plaintiff to pay him a bonus based upon the preceding year's work even though he was no longer an employee when bonuses were authorized.

The plaintiff testified that he had never been given a written document stating that employees were entitled to bonuses even if they were discharged before the bonuses were authorized. The plaintiff also testified that no one at Bic had ever orally promised or discussed with him the fact that he was entitled to a bonus in the event that he was discharged before bonuses were authorized, that Bic did not know that he thought he was entitled to the March, 1984 bonus until he so informed Bic in October, 1984, and that he did not know of a single Bic employee who had been terminated from employment and still received a bonus after termination. While Vincent Geijoo, another discharged Bic employee, testified that he knew of one discharged employee who had received such a bonus, there was no testimony that the plaintiff knew about this employee.

Clearly, there was no evidence in the aforementioned testimony to show that Bic intended to be contractually bound to pay the plaintiff a bonus in the event that he was discharged. The fact that in previous years Bic had given the plaintiff a bonus does not create a contract unless it was shown that this was a result of a contractual commitment by Bic. See *Corriveau* v.

*Jenkins Bros.*, supra. As the plaintiff correctly admits, contracts are not created by evidence of customs and usage. See *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 38, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986).

Insofar as documentary evidence is concerned, the plaintiff testified that each year he received Bic's written bonus policy guidelines. These guidelines were distributed each year to Bic's supervisors as a guide in determining how bonuses were to be determined for the employees under their supervision. The plaintiff received these guidelines in his capacity as a supervisor.[1]

The plaintiff claims that the documents communicate every aspect of Bic's bonus policy except its policy that discharged employees were not entitled to a bonus. It is his contention that these documents, coupled with

---

[1] Other documentary evidence submitted by the plaintiff consisted of the following: a copy of Bic's 1983 Annual Report which was used to establish that Bic had made a profit in the year that the plaintiff was discharged; charts that had been made by the plaintiff to depict his own performance history and the salary and bonuses he had received; the plaintiff's chart of the employment levels of various Bic employees; copies of the plaintiff's pay stubs; a chart by Bic that showed a history of the bonuses paid to various employees; a 1975 memorandum concerning Bic's new compensation program which was to go into effect on January 1, 1976; a 1976 bulletin that stated when new employees would become eligible to receive bonus consideration; a December, 1983 memorandum concerning Bic's five year history of bonuses; and a policy bulletin concerning Bic's severance benefits.

The plaintiff testified that he never saw the bulletin concerning severance benefits until after he had been discharged. It was agreed that he had never seen the memorandum on the new compensation program, and there was no testimony that he had ever seen the bulletin concerning new employees or Bic's five year bonus history or Bic's chart which showed a history of bonuses paid to various employees.

The memoranda concerning bonuses for each year, which the plaintiff did see, were virtually identical and, as an example, provided as follows:

"BONUSES

"Based on Calendar Year 1980

"1. Bonuses for calendar year 1980 will be paid as a percentage to an individual's salary with the following maximums:

his testimony that the documents led him to believe that he would receive a bonus regardless of whether he was still employed by Bic, were sufficient to prove that an implied contract had been formed.

It is true that under appropriate circumstances statements in an employee handbook or manual may give rise to an implied contract between an employer and its employee. See *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 198–99, 520 A.2d 208 (1987); *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 564, 479 A.2d 781 (1984). In this case, however, the bonus guidelines contain no language that can reasonably be construed as a basis for a contractual promise.[2] See *Finley*

"Exempt Levels

"Level IA        - maximum 20%
"Level I         - maximum 20%
"Level II        - maximum 15%
"Level III       - maximum 10%
"Level IV        - maximum 7.5%

"Non-Exempt Levels

"Grade 1         - maximum 7.5%
"Grade 2         - maximum 5%
"Grade 3         - maximum 5%
"Grade 4         - maximum 5%
"Grade 5         - maximum 5%

"2. These percentages can be reduced in future years (at a rate to be determined) if the profits of the Company are less than the previous year's profits.

"3. Bonuses will be paid some time during the first quarter, after the operating results for the previous year are announced.

"4. Determination of the bonuses to be paid to an individual must take the following into consideration:

"a. Performance of the Company;

"b. Performance of the individual in that position.

"5. The maximum referred to in paragraph No. 1 above will be based on the previous year's salary.

"6. All bonuses must be approved by Mr. Robert Adler before they are announced.

"2/6/81"

[2] We emphasize that in this case we are not dealing with an employee handbook, but with a policy memorandum that was distributed only to supervisors.

The language of the memoranda does not facially imply that they are intended to be contractual obligations because they refer to bonuses, not

v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 199 n.2, 520 A.2d 208 (1987). Although the plaintiff stressed at oral argument that the guidelines contain the phrase "Bonuses . . . will be paid . . . ." we find this unpersuasive. A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties. See *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.*, 159 Conn. 242, 246, 268 A.2d 391 (1970); *Lucier* v. *Norfolk*, 99 Conn. 686, 699, 122 A.2d 711. (1923).

The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind Bic without some evidence that it intended to be bound to such a contract. See *Brighenti* v. *New Britain Shirt Corporation*, 167 Conn. 403, 407, 356 A.2d 181 (1974).

Since there was no evidence that Bic had contracted to pay a bonus to persons it no longer employed, the trial court should not have submitted the case to the jury and erred in denying the defendant's motion to set aside the verdict. See *D'Arcy* v. *Shugrue*, 5 Conn. App. 12, 15, 496 A.2d 967, cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985). It is thus unnecessary to consider the defendant's remaining claims of error.

In light of our conclusion that the plaintiff presented insufficient evidence to show that Bic was contractually obligated to pay a bonus, whether such a bonus

---

salaries. The common meaning of the word "bonus" is " 'something given or received that is over and above what is expected.' " *Silver* v. *Silver*, 170 Conn. 305, 309, 365 A.2d 1188 (1976), quoting Webster, Third New International Dictionary.

"[A] promise must be sufficiently certain in its terms to enable the court to understand what the promisor undertakes." 1 S. Williston, Contracts (3d Ed.) § 24. "[M]ere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer." Id., § 26; see also *Borden* v. *Skinner Chuck Co.*, 21 Conn. Sup. 184, 191, 150 A.2d 60 (1958).

would have been wages within the meaning of General Statutes § 31-71a is an academic question we will not pursue.

There is error on the appeal, the judgment is set aside and the case is remanded with direction to render judgment for the defendant. The plaintiff's cross appeal is dismissed.

In this opinion the other judges concurred.