[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (NO. 104)
The plaintiffs sued the defendants in a six count complaint for intentional infliction of emotional distress termination from employment in violation of Connecticut General Statutes 31-51q, and breach of contract.
The defendants filed a motion to strike challenging the legal sufficiency of the allegations of the complaint Connecticut Practice Book 152(1). "[I]f facts provable under the allegations would support a cause of action, the [motion to strike] must fail." Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541, 545 (1980).
I. COUNTS ONE THROUGH FOUR — EMOTIONAL DISTRESS
The defendants argue that the plaintiffs have not alleged that the defendants' conduct was "extreme and outrageous" as required in this type of claim. They also argue that, as a matter of law, the plaintiffs' allegations do not rise to the level of extreme and outrageous behavior by the defendants.
Four elements must be established to prevail on a claim for intentional infliction of emotional distress:
 (1) the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.
Petyan v. Ellis, 200 Conn. 243, 253 (1986). CT Page 7715
Generally, the plaintiffs allege in counts one through four that defendant Bausch, their supervisor, harassed them and intended to humiliate them so that they would quit or be unable to work effectively. They allege that she intentionally inflicted emotional distress upon them by her conduct, which caused them damage. Plaintiffs allege disparaging remarks about their religion and ethnic backgrounds as well as unwelcomed sexual advances. They also allege that Bausch knew the harassment would cause them emotional distress. The plaintiffs further allege that Bausch's employer (defendant NCR and later defendant Wells Fargo) permitted Bausch's conduct to continue and failed to remedy the discrimination to which they were subjected.
The plaintiffs have alleged sufficient facts of sexual, religious and other harassment in counts one through four to state claims for intentional infliction of emotional distress.
The defendants also argue that the plaintiffs' allegations are not outrageous enough to constitute emotional distress as a matter of law. Once a court determines the legal sufficiency of the allegations to state a claim for intentional infliction of emotional distress, whether the plaintiffs have actually suffered emotional distress becomes a question of fact for the trier of fact. Murray v. Bridgeport Hospital,40 Conn. Sup. 56, 62 (Super.Ct. 1984).
II. COUNT FIVE — PROTECTED SPEECH
In count five, Monahan alleges Bausch and NCR violated Connecticut General Statutes 31-51q, which prohibits employers from disciplining or discharging employees based on their exercise of rights protected by the first amendment. Monahan alleges inter alia, that he publicly voiced his opposition to Bausch's sexual harassment of Proto and that he was terminated because of his statements.
The defendants argue that Monahan has failed to sufficiently allege any conduct protected by the first amendment of the United States Constitution or the parallel state provision.
Section 31-51q provides:
 Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the CT Page 7716 exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or-14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.
The court has found no published Connecticut decisions that discuss what is protected speech under this statute.
To determine whether Monahan has stated a claim for relief under 31-51q, it is necessary to determine whether he exercised any rights protected by the United States or Connecticut Constitutions.
The plaintiffs' allegations establish that the comments which led to plaintiff Monahan's dismissal were made "publicly and verbally to Bausch and coworkers." There are no allegations that the plaintiffs spoke out anywhere but at work during working hours. The place where the plaintiffs spoke out is private property owned by the defendant corporation. Although the legislature incorporated the federal constitution into Connecticut General Statutes 31-51q, the legislature cannot expand the scope of protected speech under thefirst amendment beyond that which the United States Supreme Court has protected. The Connecticut legislature can grant more protection than the federal constitution, but only via the state constitution or state statutes. The United States Supreme Court has refused "to extend federal constitutional protection to expressive activity on private property." Pruneyard Shopping Center v. Robins, 447 U.S. 74, 81 (1980). In addition, thefirst amendment only limits conduct by federal or state actors. Krieger v. B-CC Rescue Squad, 599 F. Sup. 770, 772 (D.Md. 1984); Central Hardware Co. v. NLRB, 407 U.S. 539, 547 (1972).
Monahan's speech, made on private property, is not protected by the first amendment. Similarly, the Connecticut Supreme Court has held that the state constitution's free speech CT Page 7717 provisions only protect against infringement by state action. Cologne v. Westfarms Associates, 192 Conn. 48, 62 (1984).
The legislature purportedly created a cause of action for retaliatory discharge or discipline based on the exercise of protected speech by incorporating the first amendment and the Connecticut free speech provisions, but the statute does not in fact give private employees a cause of action when they speak on private property. The plaintiffs, as private employees speaking on private property, have not stated a claim for relief under31-51q.
III. COUNT SIX — BREACH OF CONTRACT
In count six, plaintiffs Proto and Romaniello allege that all the defendants breached an implied employment contract when they ordered Proto and Romaniello to carry loaded weapons into New York in violation of New York law and thereafter terminated them when they refused to do so.
The defendants argue that the allegations are legally insufficient because the plaintiffs have not alleged that the defendant NCR terminated them. The defendants construe count six as a claim for wrongful discharge. They argue that the plaintiffs allege that they were terminated on January 26, 1989, and February 8, 1989, respectively. They further argue that NCR was not the plaintiffs' employer on these dates and, therefore, could not have fired the plaintiffs.
The plaintiffs argue that count six alleges that Bausch and NCR breached the implied contract before December 22, 1988, the date on which Wells Fargo purchased NCR's assets and accounts, and that Wells Fargo and Bausch breached the contract after that date.
"An implied contract depends upon the existence of an actual agreement between the parties." Christensen v. Bic Corp., 18 Conn. App. 451, 454 (1989). A party seeking to recover on an implied contract must allege facts that "the defendants agreed, either by words or action or conduct, to undertake any form of actual contract commitment to the plaintiff." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206 211-12 n. 2 (1987)._
The defendants argue that the allegations are legally insufficient because the plaintiffs have not alleged that the defendant NCR terminated them. The defendants construe count six as a claim for wrongful discharge. They argue that the plaintiffs allege that they were terminated on January 26, 1989, and February 8, 1989, respectively. They further argue that NCR CT Page 7718 was not the plaintiffs' employer on these dates and, therefore, could not have fired the plaintiffs.
The plaintiffs argue that count six alleges that Bausch and NCR breached the implied contract before December 22, 1988, the date on which Wells Fargo purchased NCR's assets and accounts, and that Wells Fargo and Bausch breached the contract after that date.
"An implied contract depends upon the existence of an actual agreement between the parties." Christensen v. Bic Corp., 18 Conn. App. 451, 454 (1989). A party seeking to recover on an implied contract must allege facts that "the defendants agreed, either by words or action or conduct, to undertake any form of actual contract commitment to the plaintiff." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 211-12 n. 2 (1987).
Proto and Romaniello allege that they and the defendants had an implied contract under which Proto and Romaniello performed services for the defendants and the dependents paid for those services.
Although the defendants construe count six as a claim for wrongful discharge, the plaintiffs do not attempt to state a cause of action for wrongful termination by NCR. The plaintiffs allege that all the defendants breached the parties' implied employment contract because all the defendants ordered Proto and Romaniello to carry their weapons into New York. This count is legally sufficient.
The motion to strike is granted as to count five and denied as to the other counts.
E. EUGENE SPEAR, JUDGE