[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Presently before the court is defendant's Motion for Summary Judgment (#145). CT Page 1365-LL
On November 30, 1992, the plaintiff, Valerie Wormley, filed a three count substituted complaint, dated November 28, 1991, alleging (1) breach of contract, (2) intentional infliction of emotional distress, and (3) defamation. The plaintiff also explains in her memorandum in opposition to the defendant's motion for summary judgment that paragraph 14 of count one alleges a cause of action for unintentional infliction of emotional distress.
There are no attachments to the Substituted Complaint; however, there are attachments to the Complaint. This court will treat the attachments to the Complaint as the attachments referred to in the Substituted Complaint.
The plaintiff alleges the following facts in her substituted complaint. Plaintiff was employed by defendant from February, 1987 until December 6, 1990. When the defendant initially hired the plaintiff, the defendant provided her with an employee handbook that outlined the defendant's employment policies, practices and procedures. Included in this manual was a section entitled "Discipline." According to the plaintiff, this section provided that the defendant would follow a three-phase procedure when disciplining those employees not complying with the defendant's employment rules.
In December of 1990, the plaintiff's immediate supervisor, Linda Manley Banks[1], approached the plaintiff requesting that the plaintiff sign a letter on Banks' behalf; said letter is marked Exhibit B and is attached to the Complaint. This letter bearing defendant's letter-head, indicates that Banks worked for the defendant and that she received a certain amount of compensation for her employment. The plaintiff was told that this letter was necessary for the purpose of Banks acquiring financing for a new car. Plaintiff alleges she signed Exhibit B; this allegation is contrary to her affidavit in opposition to this motion.
On December 6, 1990, after the plaintiff signed this letter, Paul Parente, who is in charge of Human Resources for the defendant, confronted the plaintiff about the signing of this letter without authority and that the letter contained false information regarding Bank's salary which constituted fraudulent and dishonest conduct.
Plaintiff alleges that at this meet she was "discharged wrongfully without implementation of the disciplinary procedures mandated in the defendant's handbook." CT Page 1365-MM
On April 1, 1993, the defendant filed its answer and special defenses to the plaintiff's substituted complaint. On October 3, 1995, the defendant filed a motion for summary judgment.[2] Pursuant to Practice Book § 204, the defendant has filed a timely memorandum of law in support of its motion. In addition to the memorandum of law, the defendant has filed various documents in support of its motion pursuant to Practice Book § 380.[3]
On November 17, 1995, the plaintiff filed her affidavit and uncertified copies of her deposition testimony with her opposing memorandum of law. On December 1, 1995, the defendant filed a reply to the plaintiff's memorandum in opposition to the defendant's motion for summary judgment.
"The summary judgment procedure is designed to eliminate the delay and expense incident to a trial where there is no real issue to be tried. . . ." Mac's Car City, Inc. v. American National Bank,205 Conn. 255, 261. "Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Barrett v. Danbury Hospital,232 Conn. 242, 250. "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law.'" . . . "and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact."Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105.
The defendant argues that the court should grant summary judgment in its favor on the plaintiff's breach of contract claim. According to the defendant, the court in Wormley v. Blue Cross Blue Shield of Connecticut, Inc., Superior Court, judicial district of New Haven, Docket No. 314088, (November 23, 1992, Thompson, J.) already stated that the plaintiff was an employee at will and therefore, an employment contract never existed between the plaintiff and the defendant. The defendant also argues that a contract did not exist because the employee handbook contains a disclaimer indicating the defendant's intent not to treat the handbook as creating a contract. Furthermore, the defendant contends that the language contained in the handbook is not contractual in nature which demonstrates that the defendant never intended to enter into a contract with the plaintiff. CT Page 1365-NN
According to the plaintiff a genuine issue of material fact exists as to whether a contract existed between the plaintiff and the defendant. Therefore, the plaintiff argues that the court should deny the defendant's motion for summary judgment as to the plaintiff's claim for breach of contract.
There is nothing to suggest that plaintiff was employed by the defendant other than as an employee at will.
In general, an employer may terminate an employee for an indefinite term at any time with or without cause. Somers v.Cooley Chevrolet Co., 146 Conn. 627, 629. Under appropriate circumstances, representations in an employee handbook "may give rise to an express or implied contract between employer and, employee." Finley v. Aetna Life Casualty Co., 202 Conn. 190,198, overruled on other grounds, 225 Conn. 782, 786; Coelho v.Posi-Seal International, Inc., 208 Conn. 106, 118. If the language in the document cannot reasonably be construed as a basis for a contractual promise, the court should direct a verdict against the party claiming the existence of a contract. Christensen v. BicCorp., 18 Conn. App. 451, 457-58. The mere fact that the plaintiff believes that the document constitutes a contract does not bind the defendant "without some evidence that it intended to be bound to such a contract." Id., 458.
The plaintiff in this case alleges that a contract to follow a three-step disciplinary process existed between the plaintiff and the defendant because of the terms of the employee handbook. On page 5 of the handbook, however, it states that "[n]ormally the disciplinary process develops in 3 stages. . . ." (Emphasis added.) (Blue Cross Blue Shield Employee Handbook, Defendant's Exhibit 1, page 5.). This sentence indicates that the three-step disciplinary procedure may not be followed for every occurrence. Furthermore, the plaintiff signed a statement acknowledging her receipt of the handbook. (Defendant's Exhibit 2.). The statement is located on a separate page from the handbook, and is printed in a normal and conspicuous font. This statement provides, "I acknowledge receipt of the Blue Cross Blue Shield Employee Handbook which sets forth the policies affecting my employment. I understand that this handbook does not create any express or implied contract rights and that the Company may at any time add, modify or change the policies and provisions contained in the handbook." (Defendant's Exhibit 2.). This language contained in the handbook and the signed statement, as a matter of law, indicate that the defendant did not CT Page 1365-OO intend that the handbook create any contract rights for plaintiff and that the plaintiff had no reasonable basis to believe that she had a contract right to any disciplinary procedure.
The plaintiff offers nothing in response to counter the defendant's showing that it never intended to enter into a contract with the plaintiff. In her affidavit, the plaintiff merely states, "[u]pon my initially being hired by Blue Cross Blue Shield, while I was required to sign what I have later found out is called a disclaimer, I never understood it to mean that the defendant could, whenever it determined it appropriate, to completely ignore any and all of the policies and procedures set forth in its Employee Handbook, particularly those concerning discipline and/or discharge." (Plaintiff's Affidavit, November 17, 1995, para. 11.). The mere fact that the plaintiff believes that the handbook constitutes a contract does not bind the defendant "without some evidence that it intended to be bound to such a contract."Christensen v. Bic Corp., supra, 458. Since the plaintiff does not offer any evidence demonstrating that the handbook creates a contract right to a three-step disciplinary procedure and, because the language of the handbook and the plaintiff's signed statement demonstrate that the defendant never intended to create such a contract right and that the plaintiff had no reasonable basis to believe such a contract right was created, there is no genuine issue of material fact as to whether such a contract right was created. Judgment should be entered as a matter of law in favor of the defendant as to the plaintiff's breach of contract claim.
The defendant argues that a genuine issue of material fact does not exist and that the court should enter judgment as a matter of law on the plaintiff's claim for intentional infliction of emotional distress under the second count. Specifically, the defendant argues that it never intended to inflict emotional distress on the plaintiff and that its conduct was not extreme and outrageous. Furthermore, the defendant argues that the plaintiff's alleged injuries are not severe enough to make a claim for intentional infliction of emotional distress. The plaintiff counters by stating that a genuine issue of material fact exists as to whether the defendant's conduct rose to the level of intentional infliction of emotional distress.
"In order for the plaintiff to prevail in a case for liability under the intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or CT Page 1365-PP should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253.
Parente states in his affidavit in support of the motion, "[w]hen I met with Ms. Wormley on December 6, 1990, I conducted myself with my usual practice. I was calm, business-like and professional. At no time did I raise my voice or make any accusations. Ms. Wormley's reaction, moreover, to the way I spoke to her and to the way I conducted the meeting did not indicate to me that she was upset by the manner in which our meeting was held. I certainly did not intend to cause Ms. Wormley to suffer any emotional distress nor did I think that the way I acted would cause her to suffer emotional distress." (Parente's Affidavit, September 29, 1995, para. 7.). Parente further states, "[f]ollowing consultation with legal counsel, I indicated to her that she was being discharged for felonious conduct and just cause, terms used under the Connecticut Unemployment Compensation Act. Upon informing Ms. Wormley that she was terminated, Ms. Wormley returned I to her work station and then left the building." (Internal quotation marks omitted.) (Parente's Affidavit, September 29, 1995, para. 10.).
The plaintiff states in her affidavit that Parente's hearing "was conducted in a demeaning, humiliating and grossly condescending manner and, therefore, it is not true that it was conducted in a business-like and professional manner as is being claimed by Mr. Parente." (Internal quotation marks omitted.) (Plaintiff's Affidavit, November 17, 1995, para. 7.). She also states, "[u]pon being told by Mr. Parente that I was fired, I was never allowed to go back to my desk or even ever allowed back into the building." (Plaintiff's Affidavit, November 17, 1995, para. 8.). Furthermore, the plaintiff indicates, "[o]ther than the erroneous belief held by Paul Parente as to my alleged improper actions, no investigation by either he or any other representative of the defendant was conducted to determine the truth as to the specific nature of the actions I took at the direction of my supervisor. . . ." (Plaintiff's Affidavit, November 17, 1995, para. 9.). The plaintiff also explains, "[a]s a result of my firing from Blue Cross Blue Shield I suffered great and traumatic emotional distress and sought counseling from non-medical sources whom I respected; my emotional distress then and now is far beyond what can be cavalierly referred to as merely discomfort." (Internal; CT Page 1365-QQ quotation marks omitted.) (Plaintiff's Affidavit, November 17, 1995, para. 12.).
A genuine issue of material fact exists as to the claim of intentional infliction of emotional distress alleged in the second count. Therefore, defendant's motion for summary judgment as to the plaintiff's claim for intentional infliction of emotional distress should be denied.
On December 23, 1992, the defendant moved to strike paragraph 14 from the plaintiff's Substituted Complaint on the ground that the paragraph failed to state a cause of action. Judge Gordon denied the defendant's motion to strike on February 11, 1993 on the grounds that the plaintiff revised paragraph 14 in order to state a cause of action for unintentional infliction of emotional; distress pursuant to the court's first order granting the defendant's original motion to strike. Wormley v. Blue Cross andBlue Shield of Connecticut. Inc., Superior Court, judicial district of New Haven, Docket No. 368735 (February 11, 1993, Gordon, J.).
In the plaintiff's memorandum of law in opposition to the defendant's motion for summary judgment, the plaintiff states that paragraph 14 of the first count of the substituted complaint alleges a cause of action for unintentional infliction of emotional distress. The plaintiff claims that the defendant's conduct in discharging her was unreasonable and this conduct caused her to suffer emotional distress. Therefore, the plaintiff claims that the court should deny the plaintiff's motion for summary judgment as to her claim for unintentional infliction of emotional distress as alleged in paragraph 14 of the substituted complaint.
The defendant claims that paragraph 14 of the plaintiff's substituted complaint cannot withstand a granting of the motion for summary judgment as to the plaintiff's first count. The defendant states that paragraph 14 is part of the first count and therefore, if the court grants summary judgment as to the first count, paragraph 14 cannot survive. The defendant also argues that the first count is for breach of contract and since non-economic damages for emotional distress are not awarded in breach of contract claims, summary judgment should be granted as to paragraph 14 in favor of the defendant. Furthermore, the defendant contends that it did not owe a duty to the plaintiff when it discharged her and that the defendant's conduct was not unreasonable. Therefore, the defendant claims that the court should grant the defendant's motion for summary judgment as to the plaintiff's claim for CT Page 1365-RR unintentional infliction of emotional distress.
A cause of action for unintentional infliction of emotional distress may be based on unreasonable conduct of an employer in discharging an employee. Morris v. Hartford Courant Co., 200 Conn. 676,681-84. In order to state a claim for unintentional infliction of emotional distress, the plaintiff has "the burden of pleading and establishing that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." Id., 683.
For reasons stated above, the plaintiff and defendant provided this court with conflicting affidavits regarding the events that occurred on December 6, 1990 the time of discharge. Therefore, there is a genuine issue of material fact as to the claim of unintentional infliction of emotional distress. Defendant's motion for summary judgment as to the plaintiff's claim for unintentional infliction of emotional distress as alleged in the first count of plaintiff's substituted complaint should be denied.
The plaintiff alleges in the third count of her substituted complaint that the defendant defamed her by publishing false statements regarding her termination. The defendant argues in its motion for summary judgment that a genuine issue of material fact does not exist and that judgment should be entered as a matter of law because it possessed a qualified privilege to publish statements regarding the plaintiff's termination. The plaintiff contends that there is abundant evidence demonstrating that a genuine issue of material fact exists as to whether the defendant abused its privilege.
In order to find the defendant liable for defamation, the court is required to find "that the [defendant] published false statements that harmed the [plaintiff], and that the [defendant was] not privileged to do so." Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1, 27. "There are two facets to the defense of privilege. The occasion must be one of privilege, and the privilege must not be abused. Whether the occasion is one of privilege is a question of law. Whether the privilege was abused . . . depends upon whether there was malice in fact . . . in uttering and broadcasting the alleged defamatory matter." Id., 28. "[C]ommunications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination are protected by a qualified CT Page 1365-SS privilege. Such communications and documents are necessary to effectuate the interests of the employer in efficiently managing its business." Id., 29. A qualified privilege will fail, however, if the defendant made the statements with actual malice, i.e. with knowledge of falsity or reckless disregard for the truth. Id.
Parente states in his affidavit, "[e]xcept for my communications with Blue Cross personnel in the Human Resources and Legal Departments, who had a need to know, and with outside counsel and except for reporting information to the State of Connecticut Employment Security Division about Ms. Wormley's termination from employment, I have never made any statement, either orally or in writing, to any individual either inside or outside the company about Ms. Wormley's termination." (Parente's Affidavit, September 29, 1995, para. 12.). Defendant has the privilege to tell those people within and without its organization who needed to know about the incident so that Parente, a manager in the defendant's corporation, could "effectuate the interests of the employer in efficiently managing its business"; provided it is done without actual malice. Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., supra, 29. Subject to that condition, defendant has a privilege to publish statements surrounding the plaintiff's termination to the State of Connecticut Employment Security Division. Petyan v. Ellis, 200 Conn. 247-52.
The plaintiff argues that the defendant must have abused its privilege because many of the plaintiff's friends and family members approached the plaintiff and told her that they had heard that the plaintiff was fired for embezzlement. (Plaintiff's Deposition Testimony, vol. 1, pages 8-22.). The plaintiff fails to offer any evidence establishing that the defendant started this rumor or made any non-privileged statements to any people inside or outside of the corporation. A genuine issue of material fact does not exist as to whether the defendant only made statements to those inside and outside of the corporation in order to further the corporation's legitimate interests. Therefore, the defendant did not abuse its qualified privilege.
In addition, the plaintiff has not offered any evidence that the defendant made statements regarding the plaintiff's termination with knowledge of its falsity or reckless disregard for the truth. During the investigatory meeting, Parente showed the plaintiff a copy of Banks' letter bearing the plaintiff's signature. (Defendant's Exhibit 5.). Parente explained in his affidavit that "[t]he information contained in the letter signed by Ms. Wormley CT Page 1365-TT was, in fact, inaccurate, as it overstated Ms. Banks' then current gross salary by more than $100 a week." (Parente's Affidavit, September 29, 1995, para. 4.). Parente further explains, "[a]t the meeting, I presented to Ms. Wormley a copy of the above-referenced letter with her signature on it. I asked Ms. Wormley if the signature on the letter was her signature. She admitted that it was her signature." (Parente's Affidavit, September 29, 1995, para. 8.). The plaintiff only indicates that the letter possessed by Parente was not the letter that she signed. (Plaintiff's Affidavit, November 17, 1995, para. 4.). To the contrary, plaintiff alleges that she signed Exhibit B attached. The fact of the matter is, however, Parente possessed a letter with the plaintiff's signature and the plaintiff admitted that the signature was hers. The plaintiff offers no evidence that Parente proceeded with reckless disregard for the truth. A genuine issue of material fact does not exist as to whether the defendant abused its privilege since Parente possessed the letter with the plaintiff's signature and the plaintiff admitted that the signature was hers. Accordingly, because the plaintiff made the statements to people covered within its qualified privilege and because the defendant did not abuse its privilege by either publishing any statements to non-privileged personnel, or by publishing statements with knowledge of their falsity or with reckless disregard for the truth, defendant's motion for summary judgment as to the plaintiff's claim for defamation under the third count should be denied.
This court is bound by prior court action in this case which permits plaintiff to allege two causes of action under the first count, i.e. breach of contract and unintentional infliction of emotional distress.
Accordingly, defendant's motion for summary judgment is granted as to the claims for breach of contract and defamation but denied as to the claims for intentional and unintentional infliction of emotional distress claims.
Ronald J. Fracasse, Judge