[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case, a mother requested that her sons renovate and make improvements to her premises. The house was in a complete state of disrepair and did not even conform to set back requirements. The three brothers agreed to do the work but two of them did not continue and the plaintiff, John Mazako, found himself working alone. He claims he made an agreement with his mother to the effect that he would continue working on the house CT Page 15578 only if she left it to him to the exclusion of his brothers. The plaintiff completed the work on the house by 1982. He claims to have supplied the labor and material for the job and much of the labor and material was the result of barter arrangements with his friends. The mother did not convey the property to the plaintiff in her lifetime nor did she leave it to him in her will — in fact the will provided the property was to be sold and that the proceeds were to be divided equally between the three sons.
After the mother's death, the plaintiff presented a claim to the administrator of his mother's estate regarding what he considered to be the reasonable value of his services to renovate the house. The claim was denied and the plaintiff then brought this action against the administrator in several counts. The matter was then scheduled for trial before a trial referee. A hearing of several days was held and the referee issued his report in favor of the plaintiff for $34,659 which was filed on May 26, 1999. An objection to the report of the trial referee was filed by the defendant on June 7, 1999. A motion to accept the trial referee's report was then scheduled for August 9, 1999.
In this case, the defendant has filed an objection to the acceptance of the report of the trial referee. No motion to correct was filed by the defendant. In Iroquois Gas TransmissionSystem, et al v. Mileski, 43 Conn. App. 47 (1996), a petition for the appointment of a condemnation committee to assess damages for taking by eminent domain of a natural gas pipeline easement was granted. The trial court granted the pipeline company's motion for judgment on the committee report and the property owner appealed. A motion to correct had not been filed pursuant to Practice Book § 19-12 (§ 438). The court said, "This court strictly construes the requirements of § 438." The court went on to say that . . . "a party who fails to file a motion to correct the facts or to add further facts severely limits his right to attack the subordinate facts in the report . . . `Absent such a motion and a subsequent exception to the report, the trial court, in ruling on the objection (is) limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions' . . . This court is limited to considering whether the facts found in the report and the conclusions drawn therefrom are adequate to support the judgment." Id., p. 51. The court went on to say that where a party does not file a request for a finding, P.B. §19-9 (§ 435) or a motion to correct, but instead files an objection to the acceptance to the report, pursuant to P.B. § CT Page 15579 19-14 (§ 440), that party cannot use such an objection to attack findings of fact. Id., p. 51.
Section 19-1 makes clear that the Practice Book requirements of Chapter 19 of the Practice Book "shall govern the procedure in matters . . . referred to committees, state referees . . . (emphasis added). In fact, the Iroquois Gas case relies for its holding on Kowalski Properties, Inc. v. Sherwin Williams Co.,7 Conn. App. 136, 140 (1986) which applied its interpretation of the Practice Book rules concerning the consequences of a failure to file a motion to correct to a case where a party objected to the judgment recommended by a trial referee. Kowalski, in turn, relied on two cases which reached a similar conclusion in cases where a trial referee's recommendation was objected to, Ruhl v.Town of Fairfield, 5 Conn. App. 104, 106 (1985); HarborConstruction Corp. v. D.V. Frione Co., 158 Conn. 14, 20-21
(1969). Expanding on the principles previously referred to inIroquois Gas, the court in the Harbor Construction case said if a motion to correct had been filed and the referee had refused to make proper corrections . . . "the defendant would have been entitled to file its exceptions with the court accompanied by a transcript of the evidence taken before the referee . . . the court does not consider exceptions to a report unless the subject matter thereof has been submitted to the author of the report in a proper motion to correct." The court went on to reason that where proper procedure was not followed and a motion to correct was not filed "no proper foundation for an attack on the report was laid." The trial court's role in such a situation is merely to determine whether "the facts found and the conclusions reached in the report are adequate to support the judgments."158 Conn. at pp. 20-21, see Saraceno v. Capitol Theatre Realty Corp.,154 Conn. 669, 673 (1967).
Basically what these cases seem to be saying is that where no motion to correct has been filed, a reviewing court cannot go back into the transcript to correct the findings of the trial referee. That is so because P.B. § 19-13 (§ 439) provides that where a motion to correct has been made and the report or finding has not been corrected, a party excepting to the denial of the motion to correct must file with its exceptions a transcript of the evidence. That is, the mechanism by which the trial court can delve into the transcript. See Garofolo v.Argraves, 147 Conn. 658, 687-88 (1960). As Garofolo points out failure to follow the motion to correct mechanism in effect leaves the court powerless to make any correction in the finding, CT Page 15580 cf. Northeastern Gas Transmission Co. v. Warren, 144 Conn. 217,222 (1957).
In his objection to the report of the trial referee in paragraph 1, the defendant notes that the report concludes that there was a reasonable expectation by the plaintiff that he would be paid by his mother for his services. The defendant objects that this is in direct contradiction to the plaintiff's testimony. But the report of the trial referee specifically "finds a determination that neither John (the plaintiff nor the decedent (the mother) expected or intended John's services to be gratuitous." To support this ultimate conclusion, the referee found several facts or circumstances to have been established — that the services were requested, that they were of an extensive nature so that a parent would not expect that these services would have been performed gratuitously and that they substantially benefitted [benefited] the decedent to the detriment of the plaintiff.
As to objection two, the defendant objects to the referee's finding that the plaintiff bartered his labor for the services and equipment of friends. The defendant states none of the people who assisted the plaintiff considered he was indebted to them nor did they barter their services to the plaintiff. Certainly, the evidence appeared to be conflicting on these matters but it is up to the trier to resolve issues of fact. The referee noted that the plaintiff and several witnesses testified the plaintiff bartered his labor for the services and equipment of his friends having become indebted to these friends for their assistance in refurbishing the mother's house. A referee should properly make a finding rather than merely refer to the evidence. Velsmid v.Nelson, 175 Conn. 221, 225 (1978); Post Road Iron Works, Inc. v.Lexington Development Group, Inc., 54 Conn. App. 534. 541 (1999). But the referee in effect here did make a finding in favor of the plaintiff on the bartering of services issue when he concluded later in his report (p. 11) that the reasonable value of the services rendered and materials furbished were sufficiently "established to trier's satisfaction" by the testimony of several witnesses whom he then lists and who would have been in the bartering arrangement.
Objection three notes that the estimate of the witness, Flanders, as to the damage claim, was accepted with "minor exception;" this testimony ascribes a value to the labor of the plaintiff's friends "for which no compensation was paid to or CT Page 15581 even sought by the friends." But again, no motion to correct was filed here and the point is that the referee by the defendant's admission did support his conclusion on the damage issue by his finding that there was a bartering arrangement and by his acceptance of the unrefuted testimony of Mr. Flanders as to the actual value of the labor and materials furbished for the job apart from the barter issue — the referee found Flander's testimony as to value to be "particularly persuasive" and noted it was not contradictory by any witnesses on behalf of the defendant.
The objection to the report also argues that the referee in his report appears to adopt equitable principals in concluding that "in equity and fair dealing the plaintiff should be compensated. However, the complaint sets forth common law claims only and does not set forth a demand for equitable relief." But the complaint here lies in several counts contractual and quasi-contractual in nature (1) promise to compensate by will (2) implied contract (3) quantum meruit (4) unjust enrichment. The latter two theories are quasi-contractual and can often be viewed as "contracts implied in law" and not true contracts. They encompass equitable notions and are often employed in contractual contexts. See Contracts Calamari Perillo 3d Ed. § 1-12, pp. 19-20. No equitable defenses were offered but given the nature of the claims made in the complaint the court cannot say they would not have been appropriate before or during trial.
In any event, the court cannot refuse to render judgment here because the referee did not consider defenses that were never raised especially where a motion to correct was not filed on this basis. But leaving aside the referee's broad "equity and fair dealing" language, the court cannot say that from the facts found that only an equitable claim was established. As Calamari points out, an implied contract can be a true contract even if it is not express as long as the agreement of the parties is manifested by conduct. The findings of the referee also support a finding of a contract implied in fact and thus a true contract. Thus, the referee found the services were done at the mother's request and because of their nature could not be considered to have been done gratuitously. The referee explicitly found the plaintiff agreed to continue working on the house only if the mother agreed the repaired premises would become his property to the exclusion of his brothers. All of this supports a finding of a true contract implied in fact by conduct of the parties. CT Page 15582
The last points the defendant brings up are that the referee failed to consider that when the alleged promise to convey the house was made it was uninhabitable and if there was such an agreement to convey it was "coerced by the circumstances." Also the referee failed to take into consideration that although the alleged agreement took place in 1977, the plaintiff did not try to enforce it "until the decedent was no longer alive to rebut his claims." Again, no motion to correct was filed requesting facts be added to support any such findings.
Besides the coercion theory is a little far fetched in light of findings made by the referee that the plaintiff performed his services at his mother's request, that what he did was not of the type that parents would expect their children to do gratuitously and that the work performed was to the mother's benefit and a detriment to the plaintiff. What was the coercion — that the mother was deprived of the option of leaving the property to her two other sons as to whom the referee found a "virtual abandonment o their prior involvement in the project" to renovate the house. (P. 3 of the report.)
True, the claim was advanced when the mother was no longer alive to rebut it, but the date of the mother's death obviously preceded the date of the referee's report and was a known factor when the referee decided to credit the plaintiff's claim.
The court accepts the referee's report and judgment should enter on it.
Corradino, J.