[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 15, 1999, the Middlebury Board of Selectmen voted to acquire a permanent easement over the defendant's property for the purpose of completing the Middlebury Greenway. The Greenway Program was a Federal Rails to Trails Program in which both state and federal funding was available to the Town of Middlebury for development of a pedestrian trail running through the Town along the prior trolley line easement area. The defendant rejected a voluntary easement and sought compensation for his property. On March 19, 1999, the Town filed a Statement of Compensation condemning the subject property and deposited with the clerk of the court the sum of $3,730 based upon the appraisal of its expert, Roy L. O'Neil.[1]
The defendant has appealed the Statement of Compensation condemnation, other than highway, claiming that the compensation awarded him by the Town is inadequate.
The subject property consists of approximately four acres with a frontage of about 425 feet along Middlebury Road. The property is undeveloped, is predominately wooded and has substantial amounts of ledge and rock outcropping. The lot has a severe sloping grade upwards from Middlebury Road toward the back of the lot. The Greenway Easement area contains 0.3611 acres or about 15,728 square feet. Middlebury Road is a heavily traveled state road also known as Route 64. Directly across from the subject parcel is a public school. The subject property is in an R-40 residential zone, requiring a minimum lot area of 40,000 square feet. There are other homes in the immediate area of modest size. Public utilities are available along the frontage of the site.
The subject property has been in defendant's family since about 1900. Prior to the Town's taking an easement over any property at all, it hired a project manager to complete preliminary design work. In early 1997, after that work was completed, the Town held a public meeting to discuss the Greenway Program and the easements that would be necessary to CT Page 11235 complete the trail. The defendant and/or his brother did attend that meeting but made no comment nor did either request any modification in the Greenway design as it affected their property. In the course of the public meeting, the property owners in attendance were advised that the easements would not prohibit them from using their property and that the Town would work with them to facilitate driveway crossings and locating and grading of the Greenway. After that meeting some property owners contacted the project manager and requested modifications at the location where the Greenway encroached on their property and changes were made to accommodate their concerns. The defendant never contacted the Project Manager. Neither, to that point, did the defendant ever contact Town officials to indicate any plans with respect to developing his four-acre parcel.
In February, 1997, defendant's brother, John, met with Edward St. John, the First Selectman, to discuss other properties owned by the McDonald family in Middlebury. The subject lot was not discussed. Mr. St. John never stated nor did he indicate that the Greenway Project would prevent development of the property on Middlebury Road. It was not until the defendant appealed the condemnation that the defendant indicated any plan to develop the property in question. After the defendant rejected a voluntary easement, the defendant met with Mr. Montville, Administrative Assistant to the First Selectman, and requested that either the Town purchase outright the parcel on Middlebury Road or provide benefits on other properties owned by the McDonalds in Middlebury.
On April 20, 1999, the Court executed the Certificate of Taking, returned it to the Town's attorney whereupon it was recorded in Volume 160, Page 938 of the Middlebury Lane Records.
The defendant did produce evidence through James Meyers of Meyers Associates, P.C., an engineer land surveyor and planner, that in January, 1997, Meyers and he along with his brother, walked the subject property to see if it had any development potential. A survey map was completed by the Meyers firm three years later, February 21, 2000, after commencement of the condemnation proceedings.
The defendant claims that the Certificate of Taking vested title to the Town in Fee Simple and does not provide that the defendant can pass and repass over the Greenway or lower its elevation, effectively rendering his property worthless and entitling him to a far greater sum of money than was deposited with the Clerk of Court. The defendant claims that the taking for the Greenway has left him with no access to Route 64. The Greenway is presently in use and a split rail fence has been erected along its entire northerly boundary on the defendant's property to CT Page 11236 prevent pedestrians from falling to the road.
In the trial, the defendant argued that the Town of Middlebury took full title to the property, not merely an easement. When the defendant took his appeal, however, he annexed Schedule "A"[2] describing the land taken as an easement.
Section 48-6 of our statutes allows a Town to take land when it has "voted to purchase the same . . . within the corporate limits . . . and if such municipal corporation cannot agree with any owner upon the amount to be paid for any real property thus taken, it shall proceed in the manner provided by Section 48-12 . . ." The plaintiff Town sought an easement for the Greenway. All pleadings in the case concern an easement only. The legal description of the property in question as recorded, describes an easement. All experts who testified as to value and the amount of compensation which defendant should receive based their opinions on an easement only. The Middlebury Board of Selectman voted to acquire a permanent easement. This court concludes that the defendant's contention that the plaintiff acquired full and absolute title in fee simple to his property on Middlebury Road is untenable. The taking for the Greenway is a non-highway taking. Section 13a-73 of the statutes has no applicability to the case at bar. In addition, our Supreme Court dealt with a similar ambiguity between "fee interest" and "right of way" or a "fee interest in a right of way". Double I Limited Partnership v. Plan Zoning Commission, 218 Conn. 65 (1991).
 "The defendants argue that the commission could reasonably have interpreted the term `right-of-way' to mean an easement, as did the trial court, and that the reference to a fee interest' was meant to assure that the easement was not held for a limited term. . . . we agree with the trial court that the commission could reasonably have concluded that the defendant . . . [did have] a `fee interest in a right of way.'" Id at 75-76.
The only real issue in this case is the value of the permanent easement over the defendant's property. The plaintiff admitted at trial that based upon the testimony of its own appraiser the appraised value should have been adjusted for time and the defendant should have received $4,200 rather than $3,730 which was deposited with the court and reflected the original valuation.
"Where part of a parcel of land or an easement in it is taken by eminent domain, the general rule is that the damages are the difference between the market value of the whole tract as it was before the taking CT Page 11237 and its market value after the taking." Northeastern Gas TransmissionCo. v. Tersana Acres, Inc., 144 Conn. 509, 513 (1957). "The `fair market value' is the price that a willing buyer would pay a willing seller based on the highest and best use of the land, assuming, of course, that a market exists for such optimum use. . . ." Mazzola v. Commissioner ofTransportation, 175 Conn. 576, 581-582 (1978). The defendant claims that he could have created a three-lot subdivision prior to the taking and that he no longer is able to do that. The defendant, therefore, claims substantial damages are due him.
Both Terry Meyers, the defendant's expert, and John Gilmore, the plaintiff's expert, testified that the property physically can be developed into a three-lot subdivision with modification in elevation and slope to the Greenway. The driveway regulations of the Town of Middlebury require a five percent grade from twenty feet from the edge of the street pavement and a maximum grade of fifteen percent thereafter. Even without the Greenway, the defendant would have had to make substantial and expensive changes in grading to accommodate the requirements of the ordinance.
In addition, because the defendant's property is situated along a state highway, defendant would have had to comply with sight line requirements imposed by the State of Connecticut. Because there is a large amount of ledge and rock outcropping on the site, blasting would be necessary. Nine thousand two hundred cubic yards of material would have to be excavated and removed from the premises at considerable cost. Blasting permits would have to be obtained requiring pre-blast and post-blast surveys of homes in the area at a total cost of six hundred dollars per home for the surveys. Because Middlebury's zoning regulations prohibit the crushing of rock on site in a residential zone, the court concludes that any offset for selling crushed rock from the site is non-existent. The Middlebury Zoning Regulations also require a public hearing for excavation of two thousand yards or more of material and require the land owner to post a bond and carry sufficient liability insurance. The court finds that the costs of developing a three-lot subdivision are so great as to render same totally impracticable.
The defendant never filed a subdivision plan with the Town of Middlebury. There was never any specific action taken by the defendant to obtain subdivision approval. In fact, the only meaningful evidence of any intention to develop the subject property arose after the taking of the easement by the Town.[3]
 "[C]ourts have uniformly adopted the approach that raw land as such, with little or no improvements or CT Page 11238 preparation for subdivision may not be valued as if the land were in fact a subdivision . . . the accepted rule for the evaluation of such land, therefore, is that the land will be considered in its present condition as a whole, with consideration given to any increment or enhancement in value due to the property's present adaptability to subdivision or development. ". . . in determining its highest and best use the trial referee must consider whether there was a reasonable probability that in the reasonably near future the subject property will be subdivided. . . . the trial referee must make this determination not only from the testimony and physical evidence presented, but also from his or her own personal observation of the property." Minicucci v. Commission of Transportation, 211 Conn. 382, 385 (1989), (internal citations omitted).
This court rejects the lot method of valuing the defendant's land because of a lack of credible evidence of the costs of clearing and improving the land, surveying and dividing it into lots, advertising and selling, holding it, and paying taxes and interest until all lots are sold. SeeRobinson v. Westport, 222 Conn. 402, 407-408 (1992). It also rejects the lot method of valuation because it appears to him more likely than not that the Town would not approve a three-lot subdivision. The defendant's evidence is too speculative and too uncertain.[4]
Having viewed the site, this court agrees with the plaintiff's appraiser, O'Neil, that the highest and best use of the subject property is as a "single over-sized private lot." The court also agrees with O'Neil's valuation approach. The court rejects the defendant's claim that the Greenway diminishes the value of his property. On the contrary, given the fact that the property is on a busily traveled state highway, if anything, same enhances its value. The court does find that "the utility of the taking area is diminished and site access is made more difficult", however. Given the unique and difficult topography of the subject lot and the size of the parcel, the court accepts the sales comparison approach to determine market value and agrees that the market value of the subject property on November 25, 1997 was $35,000.
The easement covers 0.3611 acres or 15,728 square feet. The Greenway easement was a former trolley line right-of-way. This area is also encumbered by a CLP electric utility easement but the Greenway taking does further restrict the use, by allowing for additional pedestrian traffic. The court further concludes that the easement will cause some CT Page 11239 additional cost to the owner in providing driveway access to the property. It does not prevent access, however. The value of the property before its taking was $35,000. The value of the property after the taking is $31,230, accepting Mr. O'Neil's analysis. "To ensure that severance damages are included in the trial court's assessment, damages should be calculated by the `before and after rule,' under which `[t]he proper measure of damages is the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter. `"Alemany v. Commissioner of Transportation,215 Conn. 437, 444-445 (1990). Northeaster Gas Transmission Co. v.Ehrhorn, 145 Conn. 83, 86 (1958); Laurel, Inc. v. Commissioner ofTransportation, 180 Conn. 11, 36 (1980).
The court further finds that the Town of Middlebury was in strict compliance with the statutes governing the acquisition of property by eminent domain. The plaintiff has conceded that O'Neil's appraised value of the easement should have been adjusted for time and the correct amount as of the date of taking is $4,200.
In accordance with Sections 17-11 and 17-12 of our Practice Book, the plaintiff filed with the Court an Offer of Judgment on February 15, 2001.[5] The defendant is awarded judgment in the amount of $470 plus interest of $157, without costs.
By The Court
SCHEINBLUM, J.